IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBERS **(901) 383-3381 and (901) 652-3421** THAT IS STORED AT PREMISES CONTROLLED BY **AT&T** | Case No. __19-SW-335__ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jaime Wilson Corman being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with the following cellular telephone numbers **(901) 383-3381 and (901) 652-3421,** that is stored at premises controlled by **AT&T**, a wireless telephone service provider headquartered at **208 S. Akard St., 10th Floor M, Dallas, TX 75202**. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **AT&T** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since March 30, 2008. Prior to employment with the FBI, I was an Assistant Attorney General with the Missouri Attorney General's Office. I have received training in the identification and enforcement of laws of the United States and the State of Tennessee. I have

received extensive training in criminal investigations and received additional specialized training in investigating and prosecuting violent crimes.

3.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The following information was obtained through observations and conversations of your Affiant personally, through the assistance of other law enforcement agents and agencies, including their reports, and through other sources specifically named in this affidavit. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, U.S.C. Sections 924(c) (use of a firearm during a crime of violence), 1201 (kidnapping), and 2261A (Interstate Stalking) will be located as described in Attachment A, and that that evidence will be in the form of the items listed in Attachment B, both attachments hereby being incorporated by reference as if fully set forth herein.

4.  Your Affiant is conducting an investigation into certain activities of the subject Keatron Walls, in violation of Title 18, United States Code, Sections 924(c), 1201, and 2261A. Section 924(c) prohibits the use of a firearm during a crime of violence. Section 1201 makes it a federal offense to unlawfully seize, confine, inveigle, decoy, kidnap, abduct, or carry away and hold for ransom or reward or otherwise when the person is willfully transported in interstate or foreign commerce. Section 2261A makes it a federal offense to travel in instate or foreign commerce with the intent to kill, injure, harass, or intimidate another person.

## BACKGROUND OF THE INVESTIGATION

5.  FBI Memphis was notified by Shelby County Sheriff's Office regarding a

kidnapping that occurred on 4/20/2018.  FBI Memphis later learned that the subject Keatron Walls had previously kidnapped the same victim in 2016, and was out on bond for that offense.

6. On 12/06/2016, Felicia Odom reported a kidnapping to the Memphis Police Department which occurred on 10/28/2016.  On 10/28/2016, Odom's ex-boyfriend, Keatron Walls, approached Odom as she was leaving her residence in Memphis, Tennessee.  Odom and her mother attempted to drive away from the apartment, but were blocked by Keatron Walls in his vehicle.  At that point, Walls got out of his vehicle and pointed a silver Desert Eagle 50 caliber handgun at Odom and her mother.  Walls then forced Odom in the vehicle at gunpoint and threatened to kill Odom's mother if she called the police.  Walls drove away from the apartment complex with Odom in the passenger seat.  While driving the vehicle, Walls struck Odom several times with a closed fist and open hand.  Walls told Odom he was angry she was ignoring his telephone calls and because she didn't want to talk to him.

7. Walls took Odom from Memphis into Desoto County, Mississippi.  Walls then took Odom back to Memphis where he proceeded to drive around.  At one point, Walls stopped his vehicle, set the silver Desert Eagle handgun on the back floorboard of the vehicle, and retrieved a black handgun from the backseat.  Walls then told Odom he was going to kill her and her family with the black handgun.  Walls drove around Memphis all night, then drove her back into Mississippi and drove her to Odom's mother house located at 928 Cross Road, Mississippi. Prior to dropping her off, Walls stopped down the road from Odom's mother's house behind a house that was being built.  Walls took Odom behind the house, and told her he wouldn't kill her if he got "hard."  Walls took Odom's clothes off and had sex with her. Odom told Walls she didn't want to have sex with him.

8. Odom did not report the kidnapping to law enforcement until December because

3

Walls threatened to kill her and her family. She reported the kidnapping in December, because Walls was arrested in Desoto County, MS, from an incident on 11/23/2016 where Walls fired an assault rifle into a house in Desoto County where Odom was residing. Odom was not injured, but four other adults were shot in the house.

9. On 11/23/2016, between 6:30 pm and 7:00 pm, Felicia Odom was at her residence at 928 Cross Road, Hernando, Mississippi, with six other adults when she received a phone call on her house phone. The caller did not identify himself initially, and asked if her daughter was home. The caller then identified himself as "KeKe" known to Odom as Keatron Walls. Odom then hung up the phone. Shortly after hanging up the phone, a family member mentioned seeing a Chevy Malibu driving around near the house. The dogs then started barking at the house. Family member Denver Dodson then saw someone walking around the house. Shortly thereafter Odom heard gunshots and four family members were shot. A silver Malibu was seen fleeing the area by the Desoto County Fire Department. Odom and others identified the shooter as Keatron Walls. Keatron Walls heard the police were looking for him so he went to Olive Branch Police Department and was later transported to Desoto County Sheriff's Office. Keatron Walls was interviewed by investigators and denied shooting into the residence. Desoto County Sheriff's Office recovered six spent 7.62 x 39mm shell casings from a flower bed located on the property.

10. During the investigation, two numbers for Keatron Walls were identified. Walls primarily used telephone number (901) 652-3421, but a second phone number was identified as (901) 383-3381. Walls had the second phone labeled "Trap phone" in the contacts of his primary phone.

11. Walls claimed he was with his cousin Sadaria Walls (Sadaria) the entire day when the four individuals were shot. Sadaria was interviewed by investigators and she stated she was with

4

Keatron Walls and they stayed at her residence located at 14040 Johnson Cove, Olive Branch, Mississippi, the entire time until they left to go to her grandmother's house in Memphis around 7:30 pm that evening. A review of Sadaria Walls' cell phone records revealed that Sadaria was in phone contact with Keatron Wall's telephone numbers during the time of the shooting. Sadaria was in contact with telephone number (901) 383-3381 (Walls' "trap" phone). According to phone records, at 5:56 pm, Walls (on the "trap" phone) contacted Sadaria. On 11/23/2016, at 6:26 pm, 6:41 pm, and 6:44 pm, using the trap phone, Walls contacted the house phone number at Felicia Odom's residence. At 6:46 pm, 6:51 pm, 6:55 pm, and 6:58 pm, Walls contacted Sadaria. The 911 call to law enforcement was made at 6:44 pm by residents to report the shooting.

12. FBI Memphis obtained the cell phone records of Keatron Wall's primary telephone number (901) 652-3421, and the records showed that on 11/23/2016 at 6:48 pm, 6:49 pm, 6:53 pm, 6:54 pm, and 6:59pm, Walls contacted the house phone number of Felicia Odom. From the records, it appears that none of the calls were answered.

13. Investigators went to Sadaria Walls's house, and located her father-in-law, Michael Arnold. Investigators also observed a silver Chevy Malibu vehicle in the driveway of the residence and asked Arnold about the vehicle. Arnold stated his wife and son, Octavious Arnold, drove the vehicle. Octavious Arnold is the husband of Sadaria Walls.

14. Keatron Walls was arrested on 11/23/2016, but later released on bond.

15. On 4/20/2018, Keatron Walls went to Felicia Odom's apartment where she was residing with Curtis Walls and her five year old daughter. Walls confronted Odom in the parking lot of the apartment complex located on Airways Boulevard in Memphis, Tennessee, at approximately 12:30 am. Odom was returning from work when Walls ran up to her pointing a black semi-automatic handgun at her. Walls grabbed Odom and asked her where his cousin Curtis

Walls was. Odom told Walls that Curtis was in the apartment. Walls forced Odom into her apartment where Curtis Walls and Odom's five year old daughter were sleeping. Walls then forced Odom, Curtis Walls, and Odom's five year old daughter into Odom's Chevrolet Malibu. Walls forced Odom to drive to a nearby wooded area where Walls had stored his vehicle. Walls retrieved something from the trunk of his vehicle and placed it in the trunk of Odom's vehicle. Walls then had Odom travel back to her apartment. Walls had Odom take her daughter back into the apartment and leave her inside alone. Walls then forced Odom back into her vehicle and forced her to drive Walls, Odom, and Curtis Walls away from the apartment complex.

16. Walls directed Odom to drive to his aunt's house in Marshall County, Mississippi. While driving to Walls' aunt's house, Walls made Curtis Walls unlock his cell phone and struck him in the jaw with the handgun. Walls then called his mother and ex-wife from Curtis Wall's cellphone and told them they would have to determine who would die that night. Walls asked his mom if everyone should die including Walls or just certain individuals. During the ride, Walls struck both Odom and Curtis Walls in the head with the gun barrel.

17. As they got close to the Aunt's house, Walls had Odom and Curtis Walls get out of the vehicle and ordered them both to lie on the ground face down. Walls then fired two or three shots into the ground near their head. The Desoto County Sheriff's Department later located the spent cartridge casings. After talking to his sister who was at the residence, Walls made Odom and Curtis Walls get back in the vehicle and they returned to Memphis.

18. Walls's sister, S. Walls called 911 and followed behind Walls as they traveled back to Memphis. Shelby County Sheriff's Office (SCSO) pulled the vehicle over in Memphis, Tennessee, and arrested Keatron Walls. Located in the trunk of Felicia Odom's vehicle was a Norinco, Model Mak-90, 7.62 x 39mm rifle. The rifle did not belong to Odom, and it was believed

6

to be placed in the trunk by Keatron Walls.  The rifle was seized as evidence, and sent to the Tennessee Bureau of Investigation (TBI) for further examination.

19. The TBI determined that the shell casings recovered from the shooting on 11/23/2016 in Desoto County, MS, matched the rifle seized from the trunk of Felicia Odom's vehicle on 4/20/2018.

20. On May 16, 2019, a Federal Grand Jury in the Western District of Tennessee indicted Keatron Walls on seven counts of kidnapping and two counts of use of a gun during a violent crime in violation of Title 18, U.S.C., Sections 1201 and 924(c) related to the two kidnappings on October 28, 2016, and April 20, 2018.

21. Investigators are seeking historical cell site location information on both of Keatron Wall's telephone numbers in order to determine whether the phones were near the location of Felicia Odom's residence when the shooting happened.  Keatron Walls claimed to be fifteen miles from Felicia Odom's residence during the time of the shooting.  Further, the cell site location could provide evidence of a possible conspiracy with Sadaria Walls in that she may have been using his primary phone to contact Felicia Odom's house phone and provide an alibi for Walls.  Sadaria Walls later provided an alibi to investigators that she was with Keatron Walls during the time of the shooting, but both Sadaria and Keatron were contacting each other on their phones during the same time.

22. In my training and experience, I have learned that **AT&T Wireless** is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."

7

Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

23. Based on my training and experience, I know that **AT&T** can collect cell-site data about the subject phones. I also know that wireless providers such as **AT&T** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

24. Based on my training and experience, I know that wireless providers such as **AT&T** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **AT&T** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the subject phone's user or users and may assist in the identification of co-conspirators and/or victims.

## **AUTHORIZATION REQUEST**

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

26. I further request that the Court direct **AT&T** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **AT&T**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

27. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined in 18 U.S.C. § 2711. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(1)(A). Specifically, the Court is a Magistrate Judge of a District Court of the United States that has jurisdiction over the offense being investigated, to wit, use of a firearm during a crime of violence, interstate stalking, and kidnapping in violation of 18 U.S.C. § 924C, 1201 and 2261A.

_____
Jaime Wilson Corman
Special Agent, FBI

Sworn to and subscribed in my presence this 4th day of September, 2019

_____
CHARMIANE G. CLAXTON
U.S. MAGISTRATE JUDGE